UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------ x
SAM COLLINS,                                                        :
                                                                    :
                                    Plaintiff,                      :
                                                                    :         **MEMORANDUM &**
        -against-                                                   :         **ORDER GRANTING**
                                                                    :         **DEFENDANT'S MOTION**
FEDERAL EXPRESS CORPORATION,                                        :         **FOR SUMMARY**
                                                                    :         **JUDGMENT**
                                    Defendant.                      :
------------------------------------------------------------------ x         3:22-CV-1472 (VDO)

**VERNON D. OLIVER**, United States District Judge:

    Plaintiff Sam Collins, formerly an employee of Defendant Federal Express Corporation ("FedEx"), brings this action alleging causes of action for negligent infliction of emotional distress and violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Connecticut Fair Employment Practices Act ("CFEPA"), and Age Discrimination in Employment Act ("ADEA"). (Compl., ECF No. 1, at 37–44.) The Court previously dismissed Plaintiff's negligent infliction of emotion distress claim. (ECF No. 35.) Before the Court is Defendant's motion for summary judgment on the remaining claims. After careful consideration of the record, the Court finds that the matter is appropriate for a decision without a hearing. For the following reasons, the Court **GRANTS** Defendant's motion in its entirety.

**I.**    **BACKGROUND**

    The following facts are taken from Defendant's Local Rule 56(a)1 Statement of Undisputed Material Facts ("Def.'s 56(a)," ECF No. 41-2), Plaintiff's Local Rule 56(a)2 Statement of Facts in Opposition to Summary Judgment ("Pl.'s 56(a)," ECF No. 54-1), the Complaint, and the record. The facts are recounted "in the light most favorable to" Plaintiff,

the non-movant. *Torcivia v. Suffolk Cnty.*, 17 F.4th 342, 345 (2d Cir. 2021). The facts as described below are in dispute only to the extent indicated.

### A.     The Parties

Defendant is a transportation and delivery company that maintains headquarters in Memphis, Tennessee, and a station in Danbury, Connecticut. (Pl.'s 56(a) ¶ 1; Compl. ¶ 3.)

Plaintiff, a Black male who was 62 years of age at the time of his termination from employment with Defendant, is a resident of Norwalk, Connecticut. (Compl. ¶¶ 1, 2.) In August 2003, Plaintiff was hired by FedEx as a part-time courier and, during his employment, was an at-will employee. (Compl. ¶ 4; Pl.'s 56(a) ¶¶ 11, 12.)  On September 3, 2008, Plaintiff was hired as a full-time ramp transport driver ("RTD") by Operations Manager Gary Galasso and remained in that position until being terminated in February 2020. (Pl.'s 56(a) ¶¶ 13, 14.) As an RTD, Plaintiff was domiciled at the DXRA station located in Danbury, CT. (*Id.* ¶ 16.)

### B.     Defendant's Policies and Procedures

Defendant maintains policies prohibiting discrimination, harassment, and retaliation. (*Id.* ¶ 6.) Defendant's employees are given copies of the Employee Handbook, which references and summarizes certain policies contained in the People Manual. (*Id.* ¶¶ 2, 3.) The People Manual can be accessed by employees at the workplace and online. (*Id.* ¶ 2.) It contains an Acceptable Conduct Policy, which allows for termination if an employee engages in misconduct, such as violence. (*Id.* ¶¶ 4, 5.) Plaintiff accessed the People Manual online and read the Employee Handbook a couple of times. (*Id.* ¶ 18.)

Defendant maintains an internal complaint procedure ("IEEO") for employees to report discrimination, harassment, or retaliation to either management or human resources. (*Id.* ¶ 7.) FedEx also has three-step internal grievance procedure known as the Guaranteed Fair

Treatment Procedure ("GFTP"), which allows employees to appeal employment and disciplinary decisions. (*Id.* ¶ 10.) Defendant also maintains an Alert Line for employees to anonymously report known or suspected misconduct, and an "open door" policy encouraging employees to communicate their ideas and concerns directly to management. (*Id.* ¶¶ 8, 9.)

    **C.**    **Incidents during Plaintiff's Employment**

        **1.**    **Anthony Novella**

Between April 2011 and February 2020, Anthony Novella, a Caucasian man, was a Senior Global Vehicle Technician at the DXRA station. (*Id.* ¶¶ 19, 22.) Novella never had supervisory authority over any employees and never supervised or had authority over Plaintiff. (*Id.* ¶ 20.) Novella was supervised by Fleet Maintenance Manager Ronald Distin and Senior Manager Mark Amico. (*Id.* ¶ 21.)

In April 2011, Novella and Plaintiff had a disagreement over grease and, during the disagreement, Novella allegedly called Plaintiff a "boy." (*Id.* ¶ 23.) Plaintiff reported the incident to Galasso. (*Id.* ¶ 24.) Galasso spoke to Novella, who told Galasso he called Plaintiff a "little boy" or "little kid" based on the way Plaintiff was acting. (*Id.* ¶ 24.) Novella ultimately apologized to Plaintiff. (*Id.* ¶ 25.)

On September 12, 2017, Plaintiff provided a typed, signed statement to Galasso citing the April 2011 incident, as well as alleged harassment and bullying by Novella that had occurred in the past few months. (Compl. ¶ 13; Pl.'s 56(a) ¶ 26.) Galasso provided Plaintiff with the IEEO complaint form based on Plaintiff's allegations against Novella. (Pl.'s 56(a) ¶ 30.) On September 18, 2017, Plaintiff submitted an IEEO complaint, alleging race/ethnicity and color discrimination, as well as retaliation and harassment. (*Id.* ¶ 29.) That same day, Novella gave an emailed statement to Distin claiming he was being harassed by Plaintiff. (*Id.*

3

¶ 28.) On September 27, 2017, a letter was issued to Plaintiff acknowledging that his IEEO complaint had been received and would be investigated. (*Id.* ¶ 31.)

On October 27, 2017, Plaintiff filed a workplace violence ("WPV") complaint against Novella based on the same allegations raised in his IEEO complaint. (*Id.* ¶ 32.) On October 31, 2017, Plaintiff filed an Open Door complaint alleging "[f]avoritism in the work place" as to Novella. (*Id.* ¶ 33.) On November 2, 2017, Senior Security Specialist Alexander Malaiko issued a report summarizing his investigation and findings into Plaintiff's WPV complaint. (*Id.* ¶ 34.) On November 8, 2017, a letter was issued to Plaintiff regarding his October 31, 2017 Open Door complaint. (*Id.* ¶ 35.)

On or about November 16, 2017, Galasso informed Plaintiff that Novella would no longer be allowed to park his personal vehicle or FedEx vehicles "along the curb opposite the vehicle maintenance garage" at the DXRA station. (*Id.* ¶ 36.) Galasso also instructed Plaintiff to not interact with Novella or any "maintenance mechanics at DXRA," and to contact him immediately if "an issue should arise." (*Id.*) Plaintiff did not have an encounter with Novella since Galasso's November 2017 instructions. (*Id.* ¶ 37.)

On January 15, 2018, a final report was issued summarizing the findings into the allegations made in Plaintiff's September 18, 2017 IEEO complaint. (*Id.* ¶ 39.) On January 16, 2018, a letter was issued to Plaintiff informing him the IEEO investigation had concluded. (*Id.* ¶ 40.)

    **2.    David Rio**

In September 2017, Senior Global Vehicle Technician David Rio emailed a statement to Distin detailing Plaintiff's conduct over the past seven months at the DXRA station. (*Id.* ¶ 27.)

### 3. John Latte

On January 11, 2018, Operations Manager John Latte sent Galasso an email claiming Plaintiff treated him disrespectfully and "was very short, angry and dismissive" towards him. (*Id.* ¶ 38.)

### 4. Melvin Vazquez

On January 14, 2020, Plaintiff became upset during a delivery to Newark Airport because Team Lead Melvin Vasquez would not unload cans in his tractor trailer. (*Id.* ¶ 41.) After his initial encounter with Vasquez, security footage shows Plaintiff entering an office area and telling Vazquez to "shut up" and to "keep walking," and calling him a "non-working clown." (*Id.* ¶ 42.)

### 5. Allied Security

After Plaintiff's encounter with Vazquez, Plaintiff proceeded to the FedEx security screening area to check in with his paperwork for the night. (*Id.* ¶ 43; Compl. ¶ 21.) Video footage shows that Plaintiff entered through FedEx security doors, placed items in a basket, sent the basket through an x-ray machine, and walked through the metal detector while holding his hat. (Compl. ¶ 23.) The Allied Universal ("Allied") security officer viewing the items going through the detector asked Plaintiff to walk back through the metal detector and place his hat through the x-ray machine, with which the Plaintiff complied. (*Id.* ¶ 24.) After Plaintiff walked back through the magnetometer and set off the alarm, he was asked to remove items from his pockets, which he did. (Pl.'s 56(a) ¶ 45.)

The security footage proceeds to show that Officer Michelle Ferrell positioned herself behind Plaintiff, and they bumped into each other as Plaintiff attempted to leave the screening

area. (*Id.*) The security video then shows that Plaintiff returned to the area to voice his displeasure that Officer Ferrell initiated contact with him. (*Id.* ¶ 46.)

Allied notified FedEx of Plaintiff's conduct, and as a result, FedEx Senior Security Specialist Brian Martin opened a WPV investigation. (*Id.* ¶ 47.) On February 3, 2020, Martin issued his report outlining his investigation and findings into the January 14, 2020 incident. (*Id.* ¶ 48.) During his investigation, Martin obtained and received written, signed statements from the following witnesses: (1) Plaintiff; (2) Handler Phillips Almonte; (3) Operations Manager Karen Maya; (4) Vasquez; (5) Officer Ferrell; (6) Allied Officer Hola Chou; (7) Allied Officer Maruf Ahmed; and (8) Allied Officer Gerald McKinney. (*Id.* ¶ 49.) Plaintiff was also interviewed by Security Specialist Malaiko during the investigation. (*Id.* ¶ 50.)

### D. Plaintiff's Termination

In response to Plaintiff's incident with Allied, Galasso made the decision to terminate Plaintiff and, on February 4, 2020, Galasso issued a warning/termination letter to Plaintiff for violating Acceptable Conduct Policy 2-5. (*Id.* ¶ 51.) Plaintiff appealed his termination through the GFTP where, in his complaint, he stated that management was "unfair" for not giving him a second chance and suggested his discipline be "time off without pay" rather than termination. (*Id.* ¶ 52.)

On February 11, 2020, Galasso issued his GFTP Management Decision Rationale. (*Id.* ¶ 55.) Plaintiff's termination was ultimately upheld during the GFTP. (*Id.* ¶ 56.) On February 25, 2020, Plaintiff filed a new IEEO complaint alleging that his termination was due to his "race/ethnicity." (*Id.* ¶ 57.) On March 6, 2020, a letter was issued to Plaintiff acknowledging receipt of his IEEO complaint. (*Id.* ¶ 58.) On April 13, 2020, a final IEEO investigative report

6

and letter informing Plaintiff that the IEEO investigation had concluded were issued. (*Id.* ¶¶ 59, 60.)

### E. Post-Termination Events

Plaintiff filed a claim for unemployment benefits with the State of Connecticut Unemployment Compensation Commission, and Defendant contested that claim. (Compl. ¶¶ 30, 31.)

On or about May 17, 2020, Defendant hired RTD Jason Ortega, a Black male born in 1966, to assume Plaintiff's route and job duties. (Pl.'s 56(a) ¶ 61.)

### F. Procedural History

On October 16, 2020, Plaintiff filed an Affidavit of Illegal Discriminatory Practice with the Connecticut Commission on Human Rights and Opportunities ("CHRO"). (*Id.* ¶ 62; Def's. Ex. 47, ECF No. 45-3, at 5.)

In November 2022, Defendant removed this action to federal court from the Superior Court for the Judicial District of Stamford, where Plaintiff filed a complaint on October 19, 2022 and served Defendant with process on October 20, 2022. (ECF No. 1.) Defendant filed an answer on November 17, 2022. (ECF No. 7.) On March 3, 2023, the Honorable Vanessa L. Bryant granted Defendant's motion to dismiss Plaintiff's negligent infliction of emotion distress claim. (ECF No. 35.)

On November 1, 2023, Defendant filed this motion for summary judgment on the remaining claims. (ECF No. 41.) Plaintiff opposed, and Defendant replied. (ECF Nos. 54, 55.)

## II. LEGAL STANDARD

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material

fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).[1] A fact is material when it "might affect the outcome of the suit under the governing law. . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. *Id.* The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010). It is the moving party's burden to establish the absence of any genuine issue of material fact. *Zalaski v. City of Bridgeport Police Dep't*, 613 F.3d 336, 340 (2d Cir. 2010).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor on the issue on which summary judgment is sought, summary judgment is improper. *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). However, if the non-moving party fails to make a sufficient showing on an essential element of its case on which it has the burden of proof and submits "merely colorable evidence," then summary judgment is appropriate. *Celotex*, 477 U.S. at 322–23; *Anderson* 477 U.S. at 249–50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

not rely on conclusory allegations or unsubstantiated speculation." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). There must be evidence on which the jury reasonably could find for it. *Dawson v. Cnty. of Westchester*, 373 F.3d 265, 272 (2d Cir. 2004).

### III.   DISCUSSION

Defendant now moves for summary judgment, arguing that there is no genuine issue of material fact that: **(1)** Plaintiff's aiding and abetting claim under CFEPA fails as a matter of law because such a claim can only be brought against employees; **(2)** Plaintiff's hostile work environment claims under the CFEPA, Title VII, and the ADEA are time-barred; **(3)** Plaintiff's retaliation claims under the CFEPA, Title VII, and the ADEA fail because Plaintiff has failed to establish his *prima facie* case; and **(4)** Plaintiff's race and age discrimination claims under the CFEPA, Title VII, and the ADEA fail because Plaintiff cannot demonstrate that his termination constituted disparate treatment or that Defendant's reason for terminating Plaintiff was a pretext for discrimination. (Def.'s Mem., ECF No. 41-1.)

As discussed below, the Court grants Defendant's motion for summary judgment.

### A.   Plaintiff's Aiding and Abetting Claim under the CFEPA Fails

Plaintiff alleges that Defendant has violated the CFEPA by "allowing the Plaintiff's supervisors to aid and abet each other's discriminatory action against him due to his race and age." (Compl. ¶ 35.)

Defendant is entitled to summary judgment on Plaintiff's aiding and abetting claim because Plaintiff has abandoned this claim. Under the CFEPA, it is a discriminatory practice "[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any act declared to be a discriminatory employment practice or to attempt to do so." CONN. GEN. STAT. § 46a–60(a)(5). Defendant contends that the claim fails as a

matter of law because an employer cannot be liable for aiding and abetting its own discriminatory conduct under the CFEPA. (Def.'s Mem. at 18.) Plaintiff, through counsel, presents no legal argument in support of his aiding and abetting claim. (Pl.'s Mem., ECF No. 54.) Because of the failure to address the claim in his opposition memorandum, the Court deems Plaintiff's aiding and abetting claim abandoned. *Chima v. KX Techs., LLC*, No. 3:21-CV-00801 (JCH), 2022 WL 13682064, at *7 (D. Conn. Oct. 21, 2022) (granting summary judgment on CFEPA claim because Plaintiff abandoned claim); *see also Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.").

Even if Plaintiff's CFEPA claim were not abandoned, it fails as a matter of law because only supervisory employees or other employees, not an employer, may be held liable under the CFEPA's aiding and abetting provision. *Ahmad v. Yellow Cab Co. of New London & Groton, Inc.*, 49 F. Supp. 3d 178, 187 (D. Conn. 2014) (collecting cases). No such employees are present here.

### B. Plaintiff's Hostile Work Environment Claims Based on Age and Race under Title VII, the ADEA, and the CFEPA Fail

Plaintiff alleges that Defendant violated Title VII, the ADEA, and the CFEPA by creating a hostile work environment against him due to his race and age. (Compl. ¶¶ 33, 36, 37.) Specifically, Plaintiff contends that Galasso created a hostile work environment through a bathroom incident (Pl.'s Dep., ECF No. 42-4, at 15:7-12), and that Novella created a hostile work environment by calling Plaintiff "boy," questioning Plaintiff's driving, coming close to Plaintiff and then revving the engine, and giving Plaintiff threatening looks. (Pl.'s Dep. at

22:14-22.) Defendant contends that all hostile work environment claims are time-barred. (Def.'s Mem. at 20–22.) As discussed below, the Court finds that Plaintiff's hostile work environment claims are abandoned and time-barred.

Ordinarily, a plaintiff seeking to bring a claim under Title VII, the ADEA, or the CFEPA must exhaust administrative remedies through the EEOC or CHRO. *Soules v. Connecticut et al.*, 882 F.3d 52, 57 (2d Cir. 2018) (Title VII and the CFEPA); *Bispham v. Hartford Hosp.*, No. 14-CV-1126 (VAB), 2016 WL 5348566, at *7 (D. Conn. Sept. 23, 2016) (Title VII and the ADEA). Where a plaintiff has filed a charge of discrimination with a state agency, such as here, Title VII and ADEA claims are time-barred if the after the alleged unlawful practice occurred more than 300 days prior to the filing. *Bispham*, 2016 WL 5348566 at *7. When pursuing a claim under the CFEPA, a charge must be filed within 180 days of the alleged unlawful conduct if the conduct occurred before October 1, 2019; if the conduct occurred after October 1, 2019, the charge must be filed within 300 days of when the unlawful conduct occurred. *Spisak v. Trader Joes's E., Inc.*, No. NNHCV-22-6120122-S, 2023 WL 6120645, at *4 (Conn. Super. Ct. Sept. 13, 2023).

The record shows that Plaintiff's hostile work environment claims are based on conduct that occurred in 2011 and 2017, including the following:

1. In April 2011, Novella called Plaintiff a "boy" during a disagreement over grease. (Pl.'s 56(a) ¶ 23.)

2. In 2015, Galasso told Plaintiff he could not immediately use the bathroom, but allowed an individual named "Nick" to use the bathroom. (Pl.'s Dep. at 3:17-10:24.)

3. In 2017, Novella revved the engine on his personal vehicle once while Plaintiff was walking in the parking lot and gave Plaintiff a threatening look. (ECF No. 42-20 at 5; Pl.'s Dep. at 19:21-22:21.)

    4.        In 2017, Novella put his finger in Plaintiff's face or got close to Plaintiff and questioned Plaintiff about his driving. (ECF No. 42-20 at 5; Pl.'s Dep. at 18:4-21, 19:11-20, 24:1-22.)

    5.        In 2017, Novella took a picture of Plaintiff's tractor trailer in front of the mechanic bay doors at the DXRA station that Plaintiff believes was falsified. (ECF No. 42-20 at 4.)

    6.        In 2017, Novella drove by Plaintiff a few times in a FedEx vehicle and gave Plaintiff a threatening look. (Pl.'s Dep. at 21:4-24.)

Plaintiff does not address in his opposition whether the hostile work environment claims were brought within the statute of limitations. The Court therefore finds that Plaintiff has abandoned the hostile work environment claims. *Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143 (2d Cir. 2016) (affirming finding that plaintiff's hostile work environment claims were abandoned where plaintiff failed to argue that they should survive summary judgment). Even if Plaintiff has not abandoned these claims, the Court holds that no reasonable jury could find that there was a continuous hostile work environment.

        The continuing violation doctrine provides that, where there is a "'continuous practice and policy of discrimination, the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it.'" *Hudson v. W. N.Y. Bics Div.*, 73 F. App'x 525, 528 (2d Cir. 2003) (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001)). It "applies not to discrete unlawful acts, even where those discrete acts are part of 'serial violations,' but to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 309 (2d Cir. 2020) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114-15 (2002)). "If a continuing violation is found, a court must then consider 'all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those

12

that would otherwise be time barred.'" *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 259 (2d Cir. 2023) (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir. 1996)). Thus, if a "plaintiff files an [administrative] charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 155-56 (2d Cir. 2012) (internal citation and quotation marks omitted). To show a discriminatory policy or practice, there must be evidence that specific "instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice." *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994).

Here, because Plaintiff filed a charge of discrimination with the CHRO on October 16, 2020 (Pl.'s 56(a) ¶ 34.), any alleged conduct that occurred before December 21, 2019 is untimely unless Plaintiff can establish that the continuous violation doctrine applies. Plaintiff has not presented any evidence to enable a reasonable factfinder to infer that there was a continuous hostile work environment. Despite asserting that Plaintiff's complaint against Novella were never addressed (Pl.'s Mem. at 7–9), Plaintiff proffers no evidence to show a connection between Novella's and Galasso's treatment of Plaintiff and a company policy or practice, or that there were incidents of discrimination allowed to go unremedied over the years. Instead, it is undisputed that Defendant maintains policies prohibiting discrimination and procedures for employees to report unlawful conduct. (Pl.'s 56(a) ¶¶ 5-10.) After Plaintiff reported the incident to Galasso, Galasso spoke to Novella, and Novella ultimately apologized to Plaintiff. (*Id.* ¶¶ 24, 25.) In fact, Plaintiff contradicts his allegation that of ongoing harassment continued by Novella through 2019 (Compl. ¶ 17) by conceding during his

deposition that he "never had an encounter" with Novella again after being instructed by Galasso in November 2017 to stay away from him. (Pl.'s 56(a) ¶ 27.)

Accordingly, no reasonable factfinder can find that that there was a continuous hostile work environment under Title VII, the ADEA, or the CFEPA.

### C.   Plaintiff's Retaliation Claims under Title VII, the ADEA, and the CFEPA Fail

Plaintiff alleges claims for retaliation under Title VII, the ADEA, and the CFEPA. (Compl. ¶¶ 34, 36, 37.) Specifically, Plaintiff alleges that Defendant illegally terminated his employment in February 2020 after Plaintiff's repeated complaints about his colleagues' unlawful conduct. (*Id.* ¶¶ 18, 20, 29.)

As discussed below, the Court finds that Plaintiff's retaliation claims are abandoned. Even if not abandoned, summary judgment must be entered because no reasonable jury can find that Plaintiff established a *prima facie* case of retaliation.

Retaliation claims under federal and state law are analyzed under the burden-shifting framework described in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04 (1973). *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) (collecting cases). To establish a *prima facie* case for a retaliation claim under Title VII, a plaintiff "must demonstrate that (1) [he] engaged in protected activity, (2) the defendant was aware of that activity, (3) [he] was subjected to a retaliatory action, or a series of retaliatory actions, that were materially adverse, and (4) there was a causal connection between the protected activity and the materially adverse action or actions." *Carr v. N.Y. City Transit Auth.*, 76 F.4th 172, 180 (2d Cir. 2023). Once a plaintiff makes a *prima facie* showing, a "defendant may rebut a prima facie showing of retaliation by providing a legitimate, non-retaliatory reason for the allegedly retaliatory

action." *Id.* at 178. The presumption of retaliation then dissipates, "and the plaintiff must then produce evidence and carry the burden of persuasion that the proffered reason is a pretext." *Sista v. CDC Ixis N. Am., Inc.,* 445 F.3d 161, 169 (2d Cir.2006). Retaliation claims under CFEPA and ADEA use the same burden shifting framework for Title VII claims. *Dagenais v. Wal-Mart Stores E., LP*, No. 3:23-CV-241 (SVN), 2023 WL 7220753, at *2 (D. Conn. Nov. 2, 2023) (CFEPA); *Hopkins v. New Eng. Health Care Emps. Welfare Fund*, 985 F. Supp. 2d 240, 258 (D. Conn. 2013) (ADEA).

Defendant contends that Plaintiff has failed to establish a *prima facie* case of retaliation because Plaintiff cannot demonstrate his termination was causally related to any protected activity or that FedEx's legitimate, non-retaliatory reason for terminating Plaintiff was pretext for retaliation. (Def.'s Mem. at 33–37.) Plaintiff does not address in his opposition brief whether there is evidence to support the element of causation. The Court therefore finds that Plaintiff has abandoned the retaliation claims. *Doughty v. Dep't of Dev. Servs. STS*, 607 F. App'x 97, 98 (2d Cir. 2015) (affirming dismissal of retaliation claim for being abandoned). Even if Plaintiff has not abandoned the retaliation claims, the Court holds that no reasonable jury could find that Plaintiff has established a *prima facie* claim of retaliation.

It is undisputed that Plaintiff's February 4, 2020 termination is a materially adverse action. (Def.'s Mem. at 34.) Defendant also concedes that Plaintiff's filing of a complaint on October 27, 2017 qualifies as a protected activity. (*Id.* at 35.) The totality of the undisputed facts, however, has now shown that there was no causal connection between a protected activity and Plaintiff's termination, as required for Plaintiff's *prima facie* case. While the Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal

15

constitutional right and an allegedly retaliatory action," *Gorman–Bakos v. Cornell Coop. Extension of Schnectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001), "time periods greater than one year have been found, in general, to be insufficient to establish [a] temporal relationship" for purposes of causation. *Douglas v. City of Waterbury*, 494 F. Supp. 2d 112, 125 (D. Conn. 2007). Because nearly two years passed between the protected activity and the materially adverse action, and Plaintiff has presented no evidence to explain that passage of time, no reasonable jury could find Plaintiff's termination is causally related to his protected activity.

Accordingly, no reasonable factfinder can find that that there was retaliation under Title VII, the ADEA, or the CFEPA.

### D. Plaintiff's Discrimination Claims based on Age and Race under Title VII, the ADEA, and the CFEPA Fail

Plaintiff alleges that he was unlawfully terminated due to his age and race in violation of the CFEPA, Title VII, and the ADEA. (Compl. ¶¶ 33, 36, 37). Plaintiff asserts that "[a]t issue in this case is the Plaintiff's actions on January 14, 2020" involving an incident with Allied's security officer. (Pl.'s Mem. at 6.)

As discussed below, the Court finds that Plaintiff has failed to present evidence of similarly situated comparators, thus failing to establish a *prima facie* case of discrimination based on age or race.

"In a pretext case, the Title VII, ADEA, and CFEPA claims are all analyzed under the three-step burden-shifting framework of *McDonell Douglas*." *Azam v. Yale Univ.*, No. 3:18-CV-1260 (AWT), 2020 WL 5803222, at *7 (D. Conn. Sept. 29, 2020) (collecting cases). "A plaintiff sustains an adverse employment action if he or she endures a materially adverse

16

change in the terms and conditions of employment." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (internal citation and quotation marks omitted).

"[W]here a plaintiff seeks to make out h[is] *prima facie* case by pointing to the disparate treatment of a purportedly similarly situated employee, the plaintiff must show that [he] shared sufficient employment characteristics with that comparator so that they could be considered similarly situated." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001) (citing *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997)). "A plaintiff may support an inference of race discrimination by demonstrating that similarly situated employees of a different race were treated more favorably." *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999). Similarly, a plaintiff may support an inference of age discrimination by showing that a defendant treated younger, similarly-situated employees more favorably. *Berube v. Great Atl. & Pac. Tea Co., Inc.*, 348 F. App'x 684, 686 (2d Cir. 2009). A plaintiff need not show that he is similar to the comparator in all respects, but "the individuals with whom [the] plaintiff attempts to compare h[im]self must be similarly situated in all material respects." *Doe v. City of N.Y.*, 473 F. App'x 24, 27 (2d Cir. 2012). "In the context of employee discipline, [ ] the plaintiff and the similarly situated employee[s] must have engaged in comparable conduct, that is, conduct of comparable seriousness." *Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 20 (2d Cir. 2015).

Defendant contends that Plaintiff has failed to establish a *prima facie* case of discrimination based on race or age because Plaintiff failed to identify similarly situated comparators and that Plaintiff cannot demonstrate that Defendant's legitimate, non-discriminatory reason for terminating Plaintiff's employment is a pretext for discrimination. (Def.'s Mem. at 29–33.) Instead of addressing these arguments, Plaintiff only asserts that there

17

is a dispute over whether Plaintiff or the security officer was the aggressor in the altercation with Plaintiff. (Pl.'s Mem. at 6–7.) Plaintiff has therefore waived the other issues raised in Defendant's motion. *See Prime Int'l Trading, Ltd. v. BP P.L.C.*, 937 F.3d 94, 103 (2d Cir. 2019) (finding an argument waived where a litigant did not argue in opposition to a motion); *see also Williams v. Romarm*, 751 F. App'x 20, 23 (2d Cir. 2018) (same).

Plaintiff's waiver aside, the Court holds that no reasonable jury could find that Plaintiff established a *prima facie* claim of discrimination based on race or age. As Defendant argues and as the record demonstrates, the employees identified by Plaintiff as comparators during discovery (but not in the summary judgment opposition) are not similarly situated comparators. Plaintiff identified Anthony Novella and Cody Dugan as comparators. (Pl.'s 56(a) ¶ 53.) Novella, a Caucasian man who was 53 years old in 2020, was a Senior Global Vehicle Technician at the DXRA station. (*Id.* ¶¶ 19, 22.) Dugan, a Caucasian man, was a courier whose job responsibilities required him to sort and deliver packages directly to customers. (*Id.* ¶ 54.) The undisputed facts show neither Dugan nor Novella was a RTD like Plaintiff; neither Dugan nor Novella had the same job responsibilities as Plaintiff; and neither Dugan nor Novella was involved in a similar altercation with a security officer. (*Id.* ¶¶ 19–21, 54.) Moreover, Plaintiff conceded to not knowing whether Novella had "ever had a situation like this happen with security" and stated he had "no idea" if Galasso had failed to terminate anyone else that engaged in conduct similar to Plaintiff's altercation with the security officer. (*Id.* ¶ 63.) Because Plaintiff has not shown that he and the identified comparators "were similarly situated with respect to job position and responsibilities, nor with respect to conduct[,]" Plaintiff has failed to raise a triable issue of fact on disparate treatment. *Moody v. Aircastle Advisor, LLC*, No. 3:13-CV-00575 (VAB), 2016 WL 1257805, at *12 (D. Conn. Mar. 30, 2016).

Accordingly, no reasonable factfinder can find that Plaintiff has established a *prima facie* case of discrimination under Title VII, the ADEA, or the CFEPA.

## IV. CONCLUSION

For the reasons described above, Defendant's motion for summary judgment (ECF No. 44) is **GRANTED**. Judgment is entered in the defendant's favor. As there are no remaining claims, the Clerk is directed to close this case.

**SO ORDERED.**

Hartford, Connecticut
April 25, 2024

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge